UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANTHONY EUGENE HEROD, )
) CASE NO. C10-1725-RSM
Plaintiff, )
)
v. ) REPORT AND RECOMMENDATION
)
KING COUNTY )
)
Defendant. )
)

INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Anthony Eugene Herod is a state prisoner who brings this civil rights action under 42 U.S.C. § 1983 to allege that his constitutional right to access the courts was denied during the course of his incarceration at the King County Correctional Facility ("KCCF") in 2010. Plaintiff identifies King County as the lone defendant in this action. Defendant King County now moves for summary judgment. Plaintiff has been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), but has filed no response to defendant's motion. The Court, having reviewed defendant's motion, and the balance of the record, concludes that defendant's motion for summary judgment should be

REPORT AND RECOMMENDATION
PAGE -1

01 granted and that plaintiff's amended complaint, and this action, should be dismissed with
02 prejudice.

03 BACKGROUND

04 Plaintiff was booked into the King County Correctional Facility ("KCCF") on April 25,
05 2009 and he remained there until September 3, 2010 when he was transferred to the
06 Washington Department of Corrections. (Dkt. No. 21 at 5.) During the course of his
07 incarceration at KCCF, plaintiff was assigned to various housing units within the facility
08 including administrative segregation, general population, disciplinary deadlock, and
09 psychiatric housing. (*See id*. at 5-11.) Plaintiff was assigned for significant periods of time to
10 an acute isolation cell in the psychiatric unit. (*See id*. at 7-10.) Acute isolation cells are used
11 to house inmates who are deemed suicidal by the Jail Health Services psychiatric staff. (*Id*. at
12 7.) Acute isolation cells are also used to house non-suicidal psychiatric inmates who are
13 extremely dangerous and assaultive to other inmates and/or staff. (*Id*.)

14 While confined in psychiatric housing on the seventh floor of KCCF, plaintiff requested
15 on numerous occasions, through the KCCF kite system, that he be granted access to legal
16 information. (Dkt. No. 10 at 3.) According to plaintiff, he never received any response to
17 those requests. (*Id*.) On February 19, 2010, plaintiff filed a grievance asking why he was not
18 allowed to use the legal workstation, a computer available for inmate use which provides online
19 access to a Westlaw database. (*Id*. at 7-8.) Plaintiff was advised that he was not eligible to
20 use the legal workstation because of his housing location. (*Id*. at 8.)

21 Shortly after plaintiff received the response to his initial grievance concerning use of the
22 legal workstation, plaintiff was granted leave to represent himself in his ongoing King County

Superior Court criminal proceedings. (*See* Dkt. No. 10 at 8 and 10.) On March 1, 2010, plaintiff was advised by Corrections Program Supervisor Vicki Shumaker that under the <u>Revised</u> Legal Workstation Policy, he had become eligible to be scheduled to use the legal workstation. (*Id*. at 9.) Plaintiff was advised at the same time that officers could deny an inmate access to the legal workstation if they had "reason to believe the inmate is presenting a risk to safety or security." (*Id*.)

From March 3, 2010 to May 18, 2010, plaintiff was scheduled to use the legal workstation for two hours each day. (Dkt. No. 21 at 10.) However, plaintiff was not permitted to use the legal workstation for much of that period because he remained in psychiatric isolation and was deemed a safety risk. (*Id*.) Despite his minimal access to the legal workstation, plaintiff managed to file multiple motions in his criminal case which were heard by the court. (*See* Dkt. No. 20, Exs. 2-10, 13 and 14.) Plaintiff also had the benefit of standby counsel during this period of time. (*See id*., Ex. 1.) On May 18, 2010, counsel was again appointed to represent plaintiff in his criminal proceedings and his pro se status was terminated. (*Id*., Exs. 13 and 14.) Plaintiff's appointed counsel filed various pretrial motions, submitted required trial documents, and represented plaintiff at his criminal trial. (*Id*. at 3.)

Plaintiff submitted this action to the Court for filing in October 2010. (*See* Dkt. No. 1.) The operative complaint in this action is the amended complaint filed by plaintiff in December 2010. (Dkt. No. 10.) Plaintiff alleges in his amended complaint that his federal constitutional rights were violated when he was denied access to the legal workstation at KCCF because of his housing assignment. (*Id*. at 3-5.)

/ / /

## DISCUSSION

### Summary Judgment Standard

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. Material facts are those which might affect the outcome of the suit under governing law. *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on a motion for summary judgment, the court is required to draw all inferences in a light most favorable to the nonmoving party. *Id*. at 248. The court may not weigh the evidence or make credibility determinations. *Id*.

### Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See*

*Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

A local government unit or municipality can be sued as a "person" under § 1983. *Monell v. Department of Social Servs., of City of New York*, 436 U.S. 658, 691 (1978). However, a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Id*. A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury. *Bryan County Commissioners v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell* 436 U.S. at 694).

## Access to Courts

Plaintiff asserts in his amended complaint that he was denied his constitutional right to access the courts at KCCF in early 2010. More specifically, plaintiff complains that he was impermissibly denied access to the facility's legal workstation based solely on the fact that he was assigned to psychiatric housing.

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court acknowledged that inmates have a constitutional right of meaningful access to the courts premised on the due process clause. *Id*. at 821. The Supreme Court subsequently made clear that in order to adequately allege a cause of action for deprivation of the right of access to the courts, an inmate must demonstrate that he suffered some actual injury to his right of access. *Lewis v. Casey*, 518 U.S. 343 (1996).

01    The Supreme Court explained in *Lewis* that *Bounds* did not create an abstract, free-standing right to a law library or to legal assistance, and that an inmate therefore could not establish relevant actual injury "simply by establishing that his prison's law library or legal assistance program [was] sub-par in some theoretical sense." *Lewis*, 518 U.S. at 351. Rather, in order to establish a *Bounds* violation, an inmate was required to demonstrate that the alleged shortcomings in the prison's legal access scheme had hindered, or were hindering, his ability to pursue a non-frivolous legal claim. *See id*. at 354-55.

    It appears from the record that the exclusive avenue for obtaining access to legal materials at KCCF is the legal workstation. (*See* Dkt. No. 21, Exs. 1 and 4.) According to defendant, the legal workstation is located in a room which does not allow corrections officers to directly observe at all times inmates using the workstation. (*See id*. at 3.) Because inmates in psychiatric housing are deemed to be particularly unpredictable and dangerous, they are generally not allowed to use the legal workstation. (*See id*. at 3-4.) Defendant notes that the room contains heavy equipment, as well as electrical cords, all of which pose a particular risk to inmates with mental health diagnoses, especially those that have indicated a desire to harm themselves. (*Id* at 4.)

    Defendants effectively concede plaintiff's assertion that he was denied access to the legal work station in early 2010 because of his assignment to psychiatric housing. It is somewhat troubling that the legal access scheme at KCCF is not designed to accommodate this segment of the KCCF population. However, as noted above, it is not enough to simply identify deficiencies in the legal access program. In order to establish a *Bounds* violation, an inmate must demonstrate that he suffered some actual injury as a result of the deficiencies in the legal

access program. The record reflects that during the time plaintiff was confined in psychiatric housing, he filed multiple motions in his criminal case which were heard by the court. In addition, plaintiff had the benefit of standby counsel even after being granted leave of court to proceed *pro se* in his criminal proceedings.

On May 18, 2010, plaintiff's pro se status was terminated after counsel was again appointed to represent plaintiff. Plaintiff's appointed counsel filed various pretrial motions, submitted required trial documents, and represented plaintiff at his criminal trial. Plaintiff was cleared for general population on May 26, 2010, and was assigned to a close security unit where he had access to the legal workstation. Plaintiff did not actually go to trial in King County Superior Court until July 2010. *See State of Washington v. Anthony Eugene Herod*, King County Superior Court Case Number 09-1-03972-7.

While plaintiff asserts in his amended complaint that his lack of access to the legal workstation caused him to give up his pro se status and precluded him from assisting his appointed attorney, he offers no evidence to support this assertion. As plaintiff has not demonstrated that he suffered any actual injury as a result of his lack of access to the legal workstation in early 2010, he has not established a *Bounds* violation. Accordingly, defendants are entitled to summary judgment in this action.

///

///

///

///

///

## CONCLUSION

Based on the foregoing, this Court recommends that defendant's motion for summary judgment be granted and that plaintiff's amended complaint, and this action, be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this <u>18th</u> day of July, 2011.

_____
Mary Alice Theiler
United States Magistrate Judge